## BLUM'S, INCORPORATED, *v.* JOHN D. COWHIG.

[No. 28, January Term, 1929.]

*Decided March 21st, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Wallace Bryan,* with whom were *E. Milton Altfeld, Joseph Sherbow,* and *Albert H. Blum,* on the brief, for the appellant.

*Leonard Weinberg* and *Harry J. Green,* with whom was *Howard A. Sweeten* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

John D. Cowhig, appellee, was injured by falling against a lighted gas stove which he purchased from Blum's, Incorporated, the appellant; whereupon he brought suit on an alleged express warranty by the defendant through an employee. The amended *narr.* alleges that the gas heater was purchased at the store of the defendant on December 24th, 1925, and the sale was made by an employee of the defendant, acting in the course of his employment and knowing the

purpose for which the heater was to be used; that said employee of defendant represented to plaintiff that the heater was all right and ready for service and could be used by plaintiff; that relying upon said representation which, it is alleged, was made for the purpose of inducing plaintiff to purchase said heater, plaintiff purchased the heater and paid for same; that the said representation was untrue, and that the heater was defective, in that there was no air shutter attached thereto, so that when gas was conveyed into the heater, and it was lighted in the manner directed by the defendant's employee, it produced a certain odorless, insiduous and extremely dangerous gas; that on the day of the purchase of the heater, and while plaintiff was using it in the manner directed by defendant's employee and in accordance with his direction, it generated and discharged into the room occupied by plaintiff a large quantity of said poisonous gas, of which fact plaintiff was ignorant, whereby plaintiff was poisoned by inhaling the fumes thereof, was rendered unconscious, and caused to fall upon the heater, and to be terribly burned and disfigured and permanently injured. Defendant demurred to the declaration, the demurrer was overruled, and defendant filed the general issue pleas in assumpsit, on which issue was joined. At the trial, plaintiff, testifying in his own behalf, said that he paid $2.50 for the stove, the salesman representing it to be ready for service; that he went to a hardware store and bought a metal tube and went back to his room and set the stove down on the floor and fooled around for awhile and finally decided he would try the stove out, so he unwrapped it, got the valve out of his pocket, attached it to the end of the stove, attached one end of the tube to the valve and the other end to the bracket on the wall, and wrapped a string around it; that he tested out the connection on the wall with a lighted match, and found there was no leak, and then opened the stove valve and lighted the stove; "seemed to be all right. Seemed to be burning, and after I seen she was burning all right I fooled around the room, and kept looking back at it now and then; I didn't see nothing wrong with it * * * so finally

I lit a cigarette, sitting there smoking, and finally I felt kind of dizzy like. * * * I did not know what to make of that, * * * and I still looked back at the stove, and it seemed like it was burning all right, and then I kind of got dizzy headed, and I felt like something was wrong, so I got up and walked around the bed, around the end of the bed, with the intention of shutting the gas off, that is on the wall, * * * and the last I remember was reaching for this gas jet up there and shut it off, I must have fell, or something or other * * *"; that as far as he knew he was overcome with escaping gas and his right arm was burned. The witness further testified that the wall bracket was defective.

Another witness, Henry E. Felty, testified that, when plaintiff failed to come down stairs at the usual time in the afternoon, he went to his room and found him on the floor with his arm against the heater; witness carried him out of the room, opened the windows, and called several doctors, and the gas company for a pulmotor. After doing this, and in the few minutes before the arrival of a doctor or the pulmotor, witness, leaving the unconscious man alone in the hall, according to his testimony, did some experimenting with the view of finding out what was the matter with the stove. He testified that the stove had no air shutter; that he tested the tube connections with a lighted match and found no leak; when he tried to light the stove it lit very slowly half way back and when he tried it at the other end it lit very slowly and the flames came together, but in a few seconds it popped back to the gas cock, where the gas goes into the burner. The same thing happened when he tried it in his own room. Two other witnesses, testifying as experts, said that the function of an air shutter on a gas heater of this type is to regulate the primary air so that the proper mixture of air and gas can be obtained for perfect combustion; that if there is no air shutter there is incomplete combustion, and that under these conditions acetylene gas is formed, carbon monoxide and other hydro-carbons which will vary in their combustion; that carbon monoxide is very dangerous to life; that whether it acts slowly or quickly depends upon the con-

centration, and the constitution of the person; that it is an odorless, tasteless gas. One of these experts, assuming the testimony of the plaintiff and Felty to be true, gave the opinion that the overcoming of plaintiff was due to the effect of carbon monoxide due to incomplete combustion caused by the absence of an air shutter and the burning of a flame in the orifice or air chamber after the back fire. This witness, on cross-examination, said that the tubing used by plaintiff was not safe, but could be used, that the type had been disapproved by the Health Department of Baltimore. He also admitted that if two-thirds of the gas escaped at the wall bracket, where the tube was attached, it would eventually kill one in the room where plaintiff was. The agents of the gas company, who revived plaintiff with the pulmotor, testifying for defendant, said a large part of the gas escaped at the wall bracket and that there was a strong odor of gas when they arrived at the house; also that they examined the heater after reviving plaintiff, and the air shutter was attached to it. Felty testified repeatedly that there was no odor of gas, but finally admitted there was "some." Dr. Carroll, testifying for defendant, said Felty had told him that the odor of gas was so strong he could not stay in the room.

The trial court refused to withdraw the case from the jury, which rendered a verdict in favor of plaintiff for $3,800. Forty-two exceptions were reserved by the defendant. We need consider only the last exception, which was to the ruling on the prayers, and that only in connection with the refusal of defendant's second prayer, which was a demurrer to the evidence. In our opinion that prayer should have been granted.

There was no evidence of any causal connection between the absence of the air shutter and the injury to appellee. Appellee himself testified that the heater was apparently burning all right as long as he was conscious, from fifteen to thirty minutes; and it does not appear from his testimony that any of the conditions were present, up to that time, on the alleged existence of which after the accident the experts' opinions were based.

The testimony shows, and it is manifest from an examination of an air shutter exhibited at the argument, that the stove, with the shutter in a position to permit full draft, would be exactly as if there were no shutter. It must have been contemplated that under certain conditions the draft would be fully open, otherwise the opening would not be so large. Whether those conditions did or did not exist at the time of the accident there is nothing in the record to show. The evidence is that the room was entirely closed and the only exposure to any air that might have been stirring in the house was through a very small crack under the door. There is no testimony as to whether it was a windy or a perfectly calm day, or as to whether any appreciable draft was actually coming through the crack. Presumably there was not enough at the time of the accident to require a lessening of the draft of the stove, because plaintiff, who was the only one then present, testified that the stove was then burning all right. Apparently at that time there was no popping back of the flame, which occurred in Felty's experiment and which the expert testified indicated imperfect combustion. Manifestly the experts assumed as a fact that the conditions which Felty testified to existed at the time of the accident. And yet there is nothing to show that they did. Before making the experiment Felty had raised the windows of the room, and there is nothing to show that they were closed at the time of his experiment. At any rate much air would have remained in the room from the opening of the windows. The experts should not have been permitted to answer the question as it was put, because it is perfectly obvious that all the testimony then in the case might have been true and yet the absence of the shutter might have had nothing to do with the accident.

It will be unnecessary to consider the other grounds for reversal, which were argued with much force.

*Judgment reversed without a new trial, with costs to appellant.*